This is a writ of error brought to reverse the judgment of Adams Superior Court. It appears, that the. defendant Anderson, brought his action on a decree of the Superior Court in Chancery, against the plaintiff in error, as administratrix of John Gerault. Anderson, in the state of Kentucky, instituted against Gerault, in his life time, a suit in chancery, in the Livingston Superior Court, to compel a conveyance óf a tract of 500 acres ofland, sold by Gerault, Agent, to said Anderson. That Gerault afterwards sold the same to Kirkman; that during the life time of Gerault the court of appeals decreed, that Gerault should pay to Anderson, the value of the land, to be ascertained and assessed by the court'below; that after the interlocutory decree, and before the court below had carried it into effect,' by assessing the damages, Gerault died. That the court below, it is presumed, without the knowledge of the death of Gerault, executed the interlocutory decree, by assessing the damages, and passed the final decree against Gerault, who, at that time had been dead several months. The plaintiff in error, to the action below, pleaded in abatement, that before the execution of the interlocutory decree, by the Superior Court of Livingston county, Kentucky, the intestate departed this life, and prayed judgment, to which plea the plaintiff Anderson demurred, and there was a joinder in demurrer; the court sustained the demurrer, and *31 a respondeat ouster was awarded, and the plea of ml tiel record was pleaded, and j udgment for plaintiff. Upon this j udgment, the present writ of error is founded. Two errors are assigned. 1st. That the plea in abatement was sufficient in law to abate the action below. 2d. That the plea in bar was sufficient to have barred the plaintiff’s action, and the general error; that judgment below ought to have been given for defendant, instead of the plaintiff. The defendant below relies on the single point, the con elusiveness of the decree upon which the judgment is founded. I confess this case involves, principles of great consequence, and is attended with much difficulty. The opinion of the court must be formed, more upon general principles of law, than the authority of adjudged cases. It is with great diffidence the court proceeds upon unexplored ground, but their duty compels them to advance, confiding in the conscious rectitude of their intentions. The principal error, relied upon by the plaintiff, is the first assigned. It is contended that the plaintiff is no party to the decree in Kentucky; that she could not in her capacity of administratrix sustain a bill of review, to reverse the decree, and that being no party, she is entitled, under the rules of law, to avail herself of it by plea; and secondly, that at the time of assessing the damages under the interlocutory decree, and at the final decree, the court of Kentucky, ceased to have jurisdiction over the person of her intestate. That the plaintiff, in her capacity of administratrix, could not maintain a writ of error is established by the decisions of the Federal Court, the courts of Massachusetts, and by the old Supreme Court. The decision of Connecticut is different, as reported byKibb. First — That á stranger to a judgment may avail himself of every objection by plea is equally clear-. 2 Mod. 308; Cro. Eliz. 199; Doug. 58,27, 125,76; 2 Bao. Ab’mt. 189, note. Second — That the death of a party between interlocutory.and final judgment, was error at common law, and the law was changed by the statute of 8 and 9 William III. chap. II, section 6, and the death of the party, between verdict and judgment, wasalsoerror at common law, until the statute of 17, Charles II, chap. 8; that the death of Gerault abated the suit according to the rules "of practice in chancery, and that a revivor ought to have been had against his representatives, there can be no doubt. But waiving these points, the court will rest their decision upon the question, whether the court of Kentucky, *32 after the death of Gerault, had jurisdiction over the case, so as to enable it to pass a decree to bind his representatives, who were no parties to i't7 and not citizens of Kentucky. This involves the much litigated question,, as to the conclusiveness ofjudgments, under the constitution of theUnited States and the act of congress. This court not having given an opinion to my knowledge upon this question, it is open.
By the first section of the fourth article of the constitution of the United States, it is declared, that full faith and credit shall be gifen in each state, to the public acts, records, and judicial proceedings oí every other state,, and the congress may by general laws, prescribe the manner in which acts, records, and proceedings shall be proved, and the effect thereof
By virtue of that power, Congress by the act of May 26, 1790, after prescribing the mode of authentication, ^declares, that the said records and judicial proceedings, shall have the same faith and credit given to them in every court within the United States, as they have by law and usage in the court's in the state from whence the said records are or shall be taken.”' What is the construction of this act of congress? What is to be the effect of a judgment of one state, when produced as evidence in another? Whether it is to be received as conclusive evidence of a debt, or be regarded in the same light as foreign judgments are by the English courts, are-■questions upon which the most enlightened and distinguished judges in the United States have differed in opinion. In the Circuit Court of the United States for the district of Pennsylvania, on a judgment obtained in New Jersey, the plea of nili debet, was held bad, on the ground, that ■such a plea could not be received in the courts of New Jersey. Judge Wilson was of opinion, that the act of congress had declared-the effect, and that as no such plea could be received in-New Jersey, none such could be received here. 2 Dal. 302. In Massachusetts, in sin action of debt, brought on a judgment obtained in New Hampshire on a promissory note, the defendant pleaded infancy, and that also, during all the time, from the making of the note, and the recovery of the judgment, he was an inhabitant and resident of Massachusetts. The plaintiff demurred to defendant’s plea, and judgment was given against the demurrer. Bullit ns. Knight, 1 Massachusetts Rep, 401. Ia a late case in the same court, in an action on a judgment in New Hampshire, in which-process had been *33 personally served, a majority of the court held, that the defendant should not be allowed to impeach the judgment. Parsons Chief justice says, judgments rendered in any other courts in the United States, are not, when produced here, as the foundation of the action, to be considered as foreign judgments, on which the merits are to be enquired into, as well as the jurisdiction of the court rendering them, neither are they to be considered as domestic judgments rendered in our courts of record, because the jurisdiction of the courts rendering the judgment is a subject of enquiry; but such judgments as far as the court had jurisdiction, are to have in our courts full faith and credit. They may therefore be declared on as evidence of debts or promises, and on the general issue, the jurisdiction of the court rendering them is put in issue. Bisset vs. Briggs 9 Mass. Rep. 462. In New York, three judges against two, held that in an action brought on a judgment from another state, the j udgment was to he regarded as a foreign judgment, and that the constitution and the act of congress merely required that credit be given to its contents, but that the effect and operation of it was left as at common law. Cain’s R. 480. And this is now the received and established law in New York. The merits of the decree not being involved, it is not necessary to decide, whether the decision in New York, the Circuit Court of the United States or Massachusetts bo correct. Those enlightened courts agree that the jurisdiction of the courts can be enquired into, in an action brought on a judgment, tho’ they differ as to the power to enquire into the merits. It is an established principle, that a judgment obtained without service of personal process, on defendant, is not even prima facie evidence of debt on sucha judgment. No assumpsit can be implied. 9 East. 192; Kirby.119; 8 Mass. R. 273, and in New York it has been determined, that no action would lie upon a judgment obtained in another state, against a person resident in New York, in an action commenced by the service on the defendant, while in the state of New York, of a rule to shew cause, such service being void, both on general principles, and by a statute to preserve the jurisdiction of the state. Although the rule to shew cause was in the nature oí a scire faci-as, to charge defendant de bonis propriis, on aprevio us j udgment obtained against him in a representative capacity. What was the nature of the action in Kentucky ? It was an action in personam; that the court had *34 jurisdiction over Gerault during his lifetime, is admitted, but can it be said, that their jurisdiction continued after his death? Did not all his rights and obligations devolve on his representatives? and were not those representatives out of the jurisdiction of the court? To say that the court had jurisdiction over the dead, would contradict every principle of law and rule of proceeding. Why, in chancery, on the death of a party and the transmission of his interests to another, is a bill of review required % Why is a suit said to abate on the death of either party? The answer Í3, that on the death of the party his interest ceases, and the jurisdiction of the court ceases also. In courts'rf justice there must be actor, reus and judex, before the court can act effectually to bind parties. Tn courts of admiralty, in questions of prizes, where the jurisdiction is exclusive, and conclusive against all the world, if the subject of its sentence be not within its jurisdictional limits, the jurisdiction can be pnquired into by the courts of another country. 4 Cranch. 241; 1 John. Rep. 471. Let us enquire into the principles of the decision in Bartlet vs. Night, 1st Mass.; R. Bisset vs. Briggs; Buchanan vs. Rucker, 9 East., do not proceed on the grounds, 1st. that it is contrary to the first principles ofjustice to condemn one without a hearing? í?d. The action being in personam, the court could have no jurisdiction, the party not being amenable to, or subject to their laws. Is it not an established principle, that before a person can be subjectto, he must be within the jurisdiction of those laws ? The case of Fenton vs. Garlic, 8 John. R. 194, is a case in point. In that case, a judgment had been obtained in Vermont, against the defendant in his representative capacity, and an attempt was made to subject him de bonis propt'iis, by the service of a notice upon him in the nature of a scirefacias, and a judgment was entered against him in Vermont. In an action brought in the state of New York, upon that judgment, did not the court decide upon general principles, that the judgment was void, proceeding upon the grounds, that he was not amenable to their laws, and is this not in conformity with the decision in Cranch? The proceedings being in rem, the subject matter not being within the jurisdiction of the court, the judgment was void and did not change the property* Put this case in its most favorable point of view: say in Kentucky, a law of that state authorised the court to give notice to the representatives of Gerault, to appear and make *35 themselves parties to the suit, by reviving it. They had failed so to do, and the court had proceeded to enter up the decree. Would this decree be binding upon them ? I think not., From the principle to be extracted from the cases before cited, they, not being subject to the municipal laws of Kentucky, would not be bound by them, and of consequence, a decree of the court of Kentucky, could not effect their rights. In the case of bail, on scire facias, and two nihils returned, the reason the bail is bound is, because he is'subject to the laws of the country, and must take notice of them at his peril. But a person not subject, is not bound, and what would be considered a regular proceeding in the first place, would be irregular in the last. The case in 8 John. Robinson as. Executors of Ward & Fenton vs. Garli.ck established this to be the rule: judgments of other courts coming in incidentally,, the court hold them conclusive between the parties;, but when the court is called-upon to aid in the execution of such judgment, they, at least, havearight to enquire into the jurisdiction of the court, giving the judgment,, as well as. the regularity of the proceedings. The authorities cited by defendant’s couusel, .from Ambler 762 3; and 2 Strange 733;. 4 John. R, 34 establish the principle, that judgments coming in incidental are conclusive,, but they cannot apply to the present case.. If then the principles drawn from the authorities be correct, can it be for a moment doubted, that the Superior Court of Livingston county, ceased to have jurisdiction over this case, upon the death ot Gerault, and ca‘n it be deviating from the respect due to that honorable court, for us. to do, what that cou rt itself would have done, had they been possessed of the same facts? Fastidious indeed must that man be who could be offended. The court feel every respect for the judicial decisions of sister states, and never would willingly intrench upon them. The opinion of this court does not extinguish the remedy of the defendant, as has been contended, and the progress of this cause in Kentucky when it was discovered that the court of Livingston had not jurisdiction over if, points out the course. The same may be- now adopted. This court is therefore of opinion, that the court below erred in overruling the first plea of the plaintiff in error, and the defendant below, and that the judgment of the said Superior Court be reversed.